Jeff Westerman (SBN 94559)
 Email: jeff.westerman@zimmreed.com
Caleb Marker (SBN 269721)
 Email: caleb.marker@zimmreed.com
ZIMMERMAN REED LLP
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

[Additional Attorneys for Plaintiff Listed on Back Cover]

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY UHT, BARBARA FITCH, and JESSICA HILLIS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>FULLBEAUTY BRANDS OPERATIONS, LLC, and Does 1-10<br><br>        Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT FOR**<br>  **1. Violation of California Unfair Competition Law (UCL)**<br>  **2. Violation of California False Advertising Law (FAL)**<br>  **3. Violation of California Consumer Legal Remedies Act (CLRA)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Mary Uht, Barbara Fitch, and Jessica Hillis individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendants FullBeauty Brands Operations, LLC ("Defendant" or "Full Beauty Brands") and make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a case concerning deceptive representations and omissions made by Defendant because of its misleading and unlawful pricing, sales, and discounting practices on its websites, which directly violate California a California statute and as a result deceive the reasonable consumer.

2.      Defendant, Full Beauty Brands, sells and markets plus-size clothing products online through its various brands and websites. Defendant operates this course of conduct through multiple websites under common ownership of Defendant - multiple stores through separate websites, including, but not limited to:

       (1)    Woman Within;

       (2)    ELOQUII;

       (3)    June+Vie

       (4)    OneStopPlus;

       (5)    Roaman's;

       (6)    Catherines;

       (7)    Jessica London;

       (8)    Ellos;

       (9)    Swimsuits For All;

       (10)    FullBeauty Outlet;

       (11)    BrylanHome;

       (12)    KingSize;

       (13)    Avenue;

       (14)    Active for All;

       (15)    Intimates for All; and

       (16)    Shoes for All.

3.      Each of these brands is owned and operated by Defendant in a manner that easily allows users to see all brands on a banner at the top of the page and transition frictionlessly between the brand websites.[1]

---

[1] *See* FULLBEAUTY BRANDS, *Our Brands*, https://www.fbbrands.com/company-profile/our-brands/ (last visited on September 3, 2024).

1

2

3

4

5

6

7



8

9

10

11

12

13

14    4.    Additionally, Defendant's "Universal Cart" allows customers to "shop all FullBeauty

15    brands in one seamless experience."[2]

16

17

18    

19

20

21

22

23

24

25

26

27    _____

28    [2] FULLBEAUTY BRANDS, *Our History*, https://www.fbbrands.com/company-profile/our-history/ (last
visited September 3, 2024).

5.    The products at issue are all goods that have been offered consistently on FullBeauty Brands websites, at a sale or discounted price from a supposedly higher reference price (the "Products").

6.    Defendant's websites list various items on sale or discount, and picture a stricken supposedly former or regular price next to the "sale" price. However, the former or prevailing market price listed next to the sales price is not actually the former or prevailing market price at which the product was sold in the previous three months. Instead, it is a false or inflated price used to trick consumers into believing they are receiving a discount on their purchase. It is false because the item has not been listed for sale or sold on the website in the previous three months at the listed former price.

7.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

8.    Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501. Therefore, the statute specifically prohibits this type of fake discount, where the advertised former price is not the prevailing price during the specified timeframe.

9.    Upon investigation, all or nearly all of the reference prices on the websites are false and misleading. They are not former or prevailing market prices at which the products were offered on the websites during the previous three (3) months.

10.    Plaintiffs—like hundreds of thousands of other customers across the United States—fell prey to Defendant's false, deceptive, and misleading discount scheme. As a result, Defendant has earned millions of dollars selling products at misrepresented discounts that do not actually exist.

11.    When purchasing the Products, Plaintiffs relied on Defendant's misrepresentations that the Products were on sale and were previously sold at the former strikethrough price listed next to the sale price. However, these products were not actually sold at the former or regular price listed

on the website within the previous three months before the purchase. Therefore, the discount was false.

12.     Defendant's conduct violated and continues to violate the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.* Defendant's conduct also constitutes negligent misrepresentation, and has unjustly enriched Defendant by the sale of these Products.

13.     Accordingly, Plaintiffs bring this civil action to put an end to Defendant's illegal conduct. Through this class action lawsuit, Plaintiffs seek monetary damages, restitution, and declaratory and injunctive relief on behalf of the proposed Class.

## **PARTIES**

14.     Plaintiff Mary Uht is a citizen and resident of the Los Angeles County, California.

15.     Plaintiff Barbara Fitch is a citizen and resident of the State of California.

16.     Plaintiff Jessica Hillis  is a citizen and resident of State of California.

17.     Defendant FullBeauty Brands Operations, LLC is an Indiana limited liability company, whose members are all citizens of Delaware. Defendant is headquartered in New York. Defendant is an online retailer of men's and women's clothing, shoes, and accessories, where it operates sixteen (16) online brands, including Woman Within, ELOQUII, June+Vie, OneStopPlus, Roaman's, Catherines, Jessica London, Ellos, Swimsuits For All, FullBeauty Outlet, BrylanHome, KingSize, Avenue, Active For All, Intimates For All, and Shoes For All.

18.     Defendants Does 1-10 were responsible in some manner for the injuries and damages caused to plaintiffs and the class, but their identities and/or roles are not yet known.

## **JURISDICTION AND VENUE**

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which (1) there are at least 100 members, (2) the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and (3) Plaintiffs and members

of the putative Class are citizens of a state that is different from the states in which Defendant is a citizen.

20.    This Court has personal jurisdiction over Defendant because it has contacts with California that are so continuous and systematic that they are essentially at home in this state. Defendant sold FullBeauty Brand products to consumers in California, including Plaintiffs. Defendant regularly conducts and solicits business in California, provides products to persons in the State of California, maintains an interactive commercial website, offers to ship products, and does ship products to California, allows customers in California to order products, and derives substantial revenue from customers in California.

21.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' and the Class Members' claims occurred in this District, and Defendant is subject to the Court's personal jurisdiction.

## **BACKGROUND FACTS**

22.    Defendant markets and sells plus-size men's and women's clothing, shoes, and apparel.

23.    Defendant's stated mission is "[t]o be known and trusted as the authority on plus size fit and fashion."[3]

24.    Defendant, through its various websites, has sold millions of units of merchandise to customers in California and nationwide. In fact, Defendant's annual revenue has now reached $1 billion.[4]

25.    Defendant claims its mission is to be "trusted as the authority on plus size fit and fashion" yet it continues to advertise false and misleading discounts on its websites.

---

[3] FULLBEAUTY BRANDS, *Our Company*, https://www.fbbrands.com/company-profile/ (last visited September 9, 2024).

[4] Maria Monteros, *FullBeauty Brands CEO Jim Fogarty on acquiring Eloquii from Walmart*, MODERN RETAIL, https://www.modernretail.co/operations/fullbeauty-brands-ceo-jim-fogarty-on-acquiring-eloquii-from-walmart/ (last visited on September 9, 2024).

## I.    FullBeauty Brand's Fake Discount Scheme

26.    Defendant creates the false impression that its Products' regular or former prices are higher than they truly are.

27.    On any given day, most if not all products on Defendant's various websites are represented as being discounted from a substantially higher reference price. On individual listing pages and category listing pages, the supposed mark-downs are represented to consumers by (1) prominently displaying a "crossed-out" or strikethrough reference price next to a sale price, (2) stating "____% off" adjacent to the higher reference price, and/or (3) depicting the sale price in bold red text adjacent to the reference price. Example screenshots are provided below:



Sherpa Sweatshirt
$36.99
$24.99
Save 32%



Thermal Sweatshirt
$32.99 - $37.99
From $14.99
NEW LOWER PRICE!
Save up to 54%



Printed Sweatshirt
$42.99
From $24.99
NEW LOWER PRICE!
Save up to 41%



# Sherpa Sweatshirt

★★★★☆    5322 Reviews | Q & A

$36.99

**$24.99**

COMPLAINT FOR DAMAGES

28.     The above photos are just one example from one of Defendant's websites that shows how it consistently lists its false discounts on the websites.

29.     The below sections describe further the types of deceptive sales schemes instituted across Defendant's various websites.

**A.   Defendant Offers General or Sitewide Sales Across Nearly all its Brands and Websites**

30.     In addition to the "discounts" described above, Defendant advertises sitewide or nearly sitewide sales across nearly all of its brands. Defendant almost always prominently displays on the landing page of its websites some form of sale where products are supposedly marked down by a specific percentage—for example 50% off—and will expire soon. But when one sale expires, another similar sale immediately takes its place, or, in other words, the sale never ends and a regular higher price is not charged with in 3 months -or longer. This cycle continues over and over.

31.     Defendant runs the same or similar sitewide discounts across all its websites at the same time. Examples from each website are shown below:[5]

**OneStopPlus**

FALL MUST HAVES UP TO 50% OFF | Details | View All Deals

**Woman Within**

UP TO 60% OFF TOPS & SWEATERS Details | View All Deals

**Roaman's**

ALL SOFT KNITS 50% OFF DETAILS | VIEW ALL DEALS

**Catherines**

FIND YOUR FIT EVENT: UP TO 50% OFF | Details | View All Deals

_____

[5] Screenshots were captured on September 9, 2024.

8

**Avenue**

NEW & WOW UP TO 50% OFF Details

**Jessica London**

LAYER IT ON EVENT: UP TO 50% OFF SWEATERS, DRESSES, OUTERWEAR & BOOTS! Details | View All Deals

**Ellos**

SWEATERS & SWEATS UP TO 50% OFF Details | View All Deals

**June + Vie**

EXTRA 50% OFF CLEARANCE Details | View All Deals

**Eloquii**

Up to 50% Off Everything Else* - code: EQSHOPSEPT

**Swimsuits For All**

WAREHOUSE SALE! UP TO 80% OFF | Details | View All Deals

**Intimates For All**

FALL ESSENTIALS SALE $9.99 AND UP! Details | View All Deals

**Shoes For All**

OUR MUST HAVE SHOES UP TO 50% OFF! Details | View All Deals

**Brylane Home**

HOLIDAY CELEBRATIONS SALE UP TO 60% OFF + $25 OFF $99+* WITH CODE: BHESALE25 Details | View All Deals

COMPLAINT FOR DAMAGES

**King Size**[6]



**FullBeauty Outlet**

WHEN IT'S GONE IT'S GONE! UP TO 80% OFF CLERANCE SWIMWEAR | SHOP NOW

32.     As shown above, on September 9, 2024, each Defendant website, except for Active For All,[7] ran the same or similar sitewide discount, advertised on the website home page.

33.     This is not a new event, but a recurring practice by Defendant to consistently attract customers with new rolling "discounts." For example, Defendant website Woman Within offers never-ending discounts on its website. Even when one discount ends—such as the "4th of July discount", or "Spring discount"—another one immediately or almost immediately takes its place.

---

[6] King Size did not list a percentage discount in its banner. Instead, it only listed a $30 discount, but its home page, like most of Defendant website homepages, also listed the percentage discount shown below, https://www.kingsize.com/ (last visited September 9, 2024).

[7] While not listing a general discount on its homepage, Active For All, is still running strikethrough discounts on each of its items.

This further induces customers to shop on Defendant's websites and also portrays the appearance that these sales or discounts are for a limited time, when they are actually continuous, meaning there is no real discount at all.

34.    Representative examples of sitewide sales from Woman Within are shown below.

*September 11, 2024*



*August 17, 2024*



COMPLAINT FOR DAMAGES

*June 11, 2024*



*July 31, 2023*



COMPLAINT FOR DAMAGES

1    *June 1, 2022*



12    35.    These pricing and advertising practices are deceptive and pressure consumers into

13    purchasing products from Defendant at an inflated price. Defendant intends to mislead consumers

14    into believing that they are getting a bargain by buying products from its websites on sale and at a

15    substantial and deep discount. For most, if not all products, Defendant does not offer or sell the

16    products on the website at the reference price for a substantial period of time. Therefore, the

17    reference price is artificially inflated and the advertised discounts are deceiving.

18    **B.  *Plaintiffs Purchased Products that Were Falsely Advertised as Having Discounts***

19    36.    Plaintiffs made purchases of products from two of Defendants' brands—Woman

20    Within and Roaman's.

21    37.    As further described below, Plaintiffs made purchases from Defendant in reliance on

22    Defendant's representations that the Products were being offered at a discount. However, similar to

23    the other brands, Defendant's Products were not actually listed or sold at the false strikethrough

24    reference price during the three months immediately preceding Plaintiffs' purchases.

25    **1.  Jessica Hillis**

26    38.    On August 20, 2023, Plaintiff Hillis purchased three (3) Perfect Scoopneck Tanks

27    from Defendant's website Woman Within. She made this purchase while living in El Cajon,

28    California.

COMPLAINT FOR DAMAGES

39.     On August 3, 2023, Defendant represented on its website that this product was for sale for $9.99, with a regular or former price of $18.99, listed as a strikethrough reference price under the product. Consistent with archived copies of this website, and the listing on September 27, 2023, which shows the discount at $12.99, with the same reference price of $18.99, Plaintiff saw on Defendant's website a former or regular price of $18.99 with strikethrough text and an adjacent sales price of between $9.99 and $10.25 being advertised as a "Limited Time Price!" on Defendant's website. Plaintiff Hillis then purchased the products with the belief that she was receiving all advertised discounts off the former and regular prices charged by Defendant.

40.     In the email confirmation order sent to Plaintiff Hillis on August 20, 2023, Defendant represented that the regular or former price of the Perfect Scoopneck Tank was $17.09, and that Ms. Hillis would be paying a price of $10.25 for each Scoopneck Tank:



| Item | | Quantity | Price |
|------|--|----------|-------|
| Perfect Scoopneck Tank<br>#0037-32047-9999<br><br>**Color:** PLUM PURPLE<br>**Size:** 4X (34-36)<br>**Availability:** In Stock<br>**Price:** $17.09 | | 1 | $10.25 |

41.     Prior to Plaintiff's purchase in August 2023, Defendant listed the Product at $9.99, with a strikethrough reference price of $16.99 on May 10, 2023:

*May 10, 2023*

COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19



20    42.    As of September 10, 2024, it appears the Perfect Scoopneck Tank is still on sale at a

21    price of $10.99, with a reference price of $15.99. A screenshot is shown below.[8]

22

23

24

25

26

27    _____

28    [8] https://www.womanwithin.com/w/tops-and-sweaters/tank-tops/ (last visited September 10, 2024).

1    *September 10, 2024*



43.    As evidenced by Defendant's own website, the Perfect Scoopneck Tank was not listed or sold at any price between $16.99 and $18.99 within the three months (and likely longer) prior to Plaintiff Hillis's purchase.

44.    In fact, the product was still being listed at a discount on September 10, 2024, with a similar reference price of $15.99.

45.    As another example, Plaintiff Hillis visited Defendant's Woman Within website on or around March 23, 2024, and purchased a Perfect Short-Sleeve Scoop-Neck Henley Tunic. Based on and consistent with archived copies of Defendant's website, Plaintiff Hillis saw on the listing page a former or regular price (the reference price) of $20.99 and a discount price of $9.45.

46.    In the email order confirmation sent to Plaintiff, Defendant represented that the Perfect Short-Sleeve Scoop-Neck Henley Tunic had a regular price of $20.99, and that Plaintiff Hillis was paying a discounted price of $9.45:

| Item | Quantity | Price |
|---|---|---|
| **Perfect Short-Sleeve Scoop-Neck Henley Tunic**<br>Color: PRETTY JADE<br>Size: 3X (30-32)<br>Item #: 0007-14190-9999<br>Price: $20.99<br>Status: In Stock<br>Shipping Method: Regular | **1** | **$9.45** |

*WomanWithin*

47.    Prior to Plaintiff's purchase on March 23, 2024, Defendant listed the product for sale at a price of $13.99, with a reference price of $19.99 - $24.99 on August 3, 2023.

*August 3, 2023*



48.     Further, as of July 5, 2024, more than three months after Plaintiff's purchase, the product was still on sale. Defendant advertised the product as having a reference price of $20.99, with a sale price of $15.99, which it represents as a "New Lower Price!"

*July 5, 2024*



49.     As of September 10, 2024, Defendant still had this product listed at a discount, with the same false reference price. A screenshot is shown below.

*September 10, 2024*

50.     Defendant represented that the Products had a certain regular or former price (the reference price) and that Ms. Hillis was receiving a substantial discount.

51.    For each of her purchases, Plaintiff Hillis relied on Defendant's representations on the website that the Products were being offered at a discount and that previously they were listed and sold on the website at the stated reference price within the three months immediately preceding Plaintiff's purchase.

52.    However, as shown above, Defendant did not list or sell the Products at the reference price for at least the previous three (3) months (and likely much longer) prior to Plaintiff Hillis's purchase. In fact, Defendant instituted a similar discount during the previous months, using the same false reference prices. Even in the months after Plaintiff's purchases, the Products have continued to be listed at a discount, referencing the same regular or former prices.

53.    The above-listed Products Plaintiff Hillis purchased were not substantially marked down or discounted, and any discount she was receiving had been grossly exaggerated

54.    On information and belief, for at least the 90-day period prior to Plaintiff Hillis's purchases, and even months and years more, Defendant did not list or sell any of the Products for sale on its website at the reference prices.

55.    Plaintiff Hillis would not have purchased the Products if she had known the Products were not discounted as advertised, and that she was not receiving the advertised discount.

**2.  Barbara Fitch**

56.    On or about December 25, 2023, Plaintiff Fitch purchased a pair of Straight-Leg Jeans with Invisible Stretch from Defendant's website Roaman's. She made this purchase while living in Escondido, California

57.    Based on and consistent with archived copies of Defendant's website, Plaintiff Fitch saw on the listing page a reference to a former or regular price of $82.99 - $86.99 per unit in strikethrough text, and an adjacent sale price of $14.98. She then proceeded to purchase the product with the understanding that she was receiving all advertised discounts off the former and regular prices charged by Defendant.

58.    Prior to December 2023, Defendant listed the product at $16.98, with a reference price of $82.99 - $86.99 on August 3, 2023:

1

2

3

4

5

6

7

8

9

10



11  *August 3, 2023*

12

13  59.    Prior to that, on May 23, 2023, Defendant listed the same product at $17.98, with the

14  same reference price of $82.99 - $86.99:

15

16  *May 23, 2023*



17

18

19

20

21

22

23  60.    Defendant represented that the Product had a certain regular or former price (the

24  reference price) and that Ms. Fitch was receiving a substantial discount.

25  61.    Plaintiff Fitch relied on Defendant's representations on the website that the product

26  was being offered at a discount and that previously it was listed and sold on the website at the stated

27  reference price within the three months immediately preceding her purchase.

28

62.     However, as shown above, Defendant did not list or sell the Product at the reference price for at least the previous seven (7) months prior to Plaintiff Fitch's purchase. In fact, Defendant instituted a similar discount during the previous seven months, using the same false reference prices.

63.     The above-listed Product Plaintiff Fitch purchased was not substantially marked down or discounted, and any discount she was receiving had been grossly exaggerated.

64.     For at least the 90-day period prior to Plaintiff Fitch's purchase, and even months and years more, Defendant very rarely, if ever, offered any of the Products for sale on its website at the reference prices.

65.     Plaintiff Fitch would not have purchased, and/or would not have paid as much as she did for the Product, if she had known the Product was not discounted as advertised, and that she was not receiving the advertised discount.

**3.  Mary Uht**

66.     On or about August 12, 2023, Plaintiff Uht purchased a pair of The Skyla Slip On Sneakers from Defendant's website Woman Within. She made this purchase while living in Signal Hill, California.

67.     Based on and consistent with archived copies of Defendant's website, Plaintiff Uht saw on the listing page a reference to a former or regular price of $99.99 - $109.99 per unit in strikethrough text, and an adjacent sale price of $39.99. She then proceeded to purchase the product with the understanding that she was receiving the advertised discount off the former and regular prices charged by Defendant.

68.     In the order details sent to Plaintiff Uht, Defendant represented that Ms. Uht paid a price of $35.57 for the item. This small discount was likely an additional discount from the $39.99 price shown to Ms. Uht on the website.

69.     Prior to August 2023, Defendant listed the product at $39.99 (and even as low as $27.99), with the same reference price of $99.99 - $109.99:

[Images on Next Page]

COMPLAINT FOR DAMAGES

1

2

3

4    _May 10, 2023_

5

6

7

8

9

10

11

12

13

14



15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16



17  *March 8, 2023*

18

19

20

21

22

23

24



25

26

27  *February 20, 2023*

28



70.   On March 28, 2024, the product was still listed with the same discount and reference price:

_March 28, 2024_



71.     As of September 11, 2024, the item remains on sale. It is listed at a sale price of $18.97 with the same reference price of $99.99 - $109.99.

*September       11,                                                    2024*



The Skyla Slip On Sneaker
by Comfortview
$90.00 - $100.00
**From $18.97**
Save up to 81%

72.     Defendant represented that the Skyla Slip On Sneaker had a certain regular or former price (the reference price) and that Ms. Uht was receiving a substantial discount.

73.     Plaintiff Uht relied on Defendant's representations on the website that the product was being offered at a discount and that previously it was listed and sold on the website at the stated reference price on a regular basis the three months next immediately preceding the publication of this discount.

74.     However, as shown above, Defendant did not list or sell the Product at the reference price for at least the previous six (6) months prior to Plaintiff Uht's purchase. In fact, Defendant advertised a similar discount during the previous months, using the same false reference prices.

75.     The above-listed Product that Plaintiff Uht purchased was not substantially marked down or discounted, and any discount she was receiving had been grossly exaggerated.

76. Upon information and belief, for at least the 90-day period prior to Plaintiff Fitch's purchase, and even months and years more, Defendant did not offer the Products for sale on its Woman Within website at the reference prices.

77. Plaintiff Uht would not have purchased the Product if she had known the Product was not discounted as advertised, and that she was not receiving the advertised discounts.

### C. Defendant Advertises False Reference Prices on Products Across All of its Brands and Defendant's Deceptive Pricing Scheme is Substantially Similar Across all of its Brands

78. As described above, Defendant operates a common deceptive marketing scheme for its brands, by listing false reference prices next to its sale prices in order to entice consumers to purchase products under the false belief that they are receiving a discount. However, the regular or former price used as the strikethrough reference price is actually a fake price because the product was not sold at that price in the previous three months or sometimes ever.

79. Defendant conducts the same pricing scheme with products across all of its websites, which include Woman Within, ELOQUII, June+Vie, OneStopPlus, Roaman's, Catherines, Jessica London, Ellos, Swimsuits For All, FullBeauty Outlet, BrylanHome, KingSize, Avenue, Active For All, Intimates For All, and Shoes For All. All Products are sold on websites and under brands owned and operated by Defendant. All Products on Defendant's websites are purchased in the same way, using the "Universal Cart", which allows consumers to move freely between websites while retaining all items added to their cart on Defendant's various websites. All Products contain the same or similar discounts, which list a false strikethrough reference price next to the "discounted" price.

80. Through their initial investigation, Plaintiffs have discovered at least one product, and usually multiple, on each of Defendant's websites that is being marketed at a discount using a fake reference price. The reference prices shown below are false because they are not the prevailing market price of the product, because the products were not sold on the websites at that price in the previous three months. In many instances, Defendant does not offer or sell the products on the website at the reference price for a substantial time—sometimes years. The reference price is, therefore, artificially inflated, and the advertised discounts are deceiving.

81. Therefore, the misleading effect of the Products' false advertised reference prices is the same for all consumers purchasing Products across all of Defendant's websites

82. Below are examples from three additional websites owned and operated by Defendant, illustrating the common use of false discounts with fake reference prices.

**a. Avenue**

83. Defendant employs the same false pricing scheme on its Avenue website. The Avenue brand and website are owned and operated by Defendant.

84. For example, on October 8, 2024, Defendant listed the Serena Top for sale on its Avenue website at a price of $24.99, with two strikethrough reference prices of $59.95 and $49.99. Prior to that, on September 10, 2024, Defendant listed the Serena Top for sale on its Avenue website at a price of $29.99, with a strikethrough reference price of $59.95, and adjacent text that says "Save 49%":

_October 8, 2024_



_September 10, 2024_

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    85.  Prior to that, Defendant

16  listed the Serena Top at $7.99, with a reference price of $44.99 on April 23, 2024, and a price of

17  $9.99, with a reference price of $44.99 on March 1, 2024.

18
19
20
21
22
23
24
25
26
27
28

1  *March 1, 2024*



12  86.    Prior to that, Defendant listed the Serena Top at $9.99, with a reference price of

13  $49.00 on February 5, 2024.

14  *February 5, 2024*



26  87.    For the last seven (7) months, and probably longer, Defendant has listed the Serena

27  Top as being for sale, with a false reference price adjacent to the sale price. The reference price on

28  October 8, 2024 is false because the product has not been listed or sold on the Avenue website at

1  that price for at least the past three months. Prior reference prices of $44.99 were also false because

2  the product was not listed or sold at that price either. In fact, the product has been listed at $9.99 or

3  lower for the last seven (7) months at least. These fake reference prices and false discounts violate

4  California law.

5      88.    Upon information and belief, Defendant conducts this same false discount scheme

6  with many, if not all, of the products on its Avenue website.

7          **b.  June + Vie**

8      89.    Defendant employs the same deceptive pricing scheme on its June + Vie website.

9  The June + Vie website and brand are owned and operated by Defendant.

10     90.    On its June + Vie website, Defendant employed its discount scheme by offering

11 limited "sales" on its products, and listing a fake strikethrough reference price next to the product.

12 However, the product is not actually listed or sold on the website at the reference price within the

13 three months next immediately preceding the publication of this discount. Therefore, the reference

14 price is false, and the advertisement violates California law. An example of this scheme is shown

15 below with the Acid Wash Peasant Blouse sold on Defendant's website:

16 _October 8, 2024_



26 _September 10, 2024_

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    91.    On October 8, 2024, the Acid Wash Peasant Blouse was listed for sale with an

16  advertisement that stated "Save 50%", and a strikethrough reference price of $109.99. A month

17  earlier, on September 10, 2024, the Acid Wash Peasant Blouse was listed for sale with an

18  advertisement stating "Save up to 70%", and the same strikethrough reference price of $109.99

19  above the discounted price. However, this reference price was false, and therefore the sale is false,

20  because the product was not actually listed or sold by Defendant on its website for that reference

21  price within the previous three months.

22    92.    As shown below, the Acid Wash Peasant Blouse was listed for sale with the same

23  $109.99 strikethrough reference price on April 22, 2024:

24
25
26
27
28

*April 22, 2024*



COMPLAINT FOR DAMAGES

1   *August 6, 2023*



93.    Defendant listed the Acid Wash Peasant Blouse on its website for sale on September 10, 2024, with a false reference price of $109.99. However, more than three months earlier, the blouse was still listed at a discount with the same reference price. Further, more than a year ago, the blouse was listed at $79.99, an *even lower reference price*. Upon information and belief, at no time throughout the past twelve (12) months did Defendant list or sell the Acid Wash Peasant Blouse for $109.99. Therefore, Defendant's false reference price and discount violate California law.

94.    Upon information and belief, Defendant conducts this same false discount scheme on many, if not all, of products on its June + Vie website.

    **c.  Eloquii**

95.    Defendant employs the same deceptive pricing scheme on its Eloquii website. The Eloquii website and brand are owned and operated by Defendant.

96.    On its Eloquii website, Defendant employs its discount scheme by offering limited "sales" on its products, and listing a strikethrough reference price next to the product. However, the product is not actually listed or sold on the website at the reference price within the three months

next immediately preceding the publication of this discount. Therefore, the reference price is false, and the advertisement violates California law. An example of this scheme is shown below with the Satin Puff Sleeve Pleated Dress sold on Defendant's website:

_October 8, 2024_



Satin Puff Sleeve Pleated Dress
$169.95
30% OFF* with code: EQYESPLEASE
**From $118.96 with code**
Save up to 30%
★ ★ ★ ★ ☆

COMPLAINT FOR DAMAGES

*September 10, 2024*



Satin Puff Sleeve Pleated Dress

~~$169.95~~

30% OFF* with code: EQSHOPSEPT

**$118.96 with code**

Save up to 30%

COMPLAINT FOR DAMAGES

*August 16, 2024*



*July 11, 2024*



COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15



16 _March 2, 2024_

17

18



19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

97.     As of October 8, 2024, Defendant lists this product at a false discounted price of $118.96, with a reference price of $169.95. However, Defendant did not list or sell this product for that reference price throughout 2024. As illustrated above, Defendant routinely listed this product on its Eloquii website at a false discounted price, with an even lower reference price of $159.95, claiming it was offering "30% off" each month. Instead, there was no 30% discount, because the product was not actually listed or sold at the reference price within the three months next immediately preceding the publication of this discount.

98.     Upon information and belief, Defendant conducts this same false discount scheme with many, if not all, of its products on its Eloquii website.

99.     The above examples are merely a sampling from the products listed on Defendant's sixteen (16) websites at false discount prices.

100.    Based on Defendant's numerous advertisements, reasonable consumers would reasonably believe that the reference prices Defendant advertises are Defendant's former prices (that is, the price at which the goods were actually offered for sale and sold at before the limited time offer went into effect). In other words, reasonable consumers would reasonably believe that the reference prices Defendant advertises represent the amount that consumers formerly had to pay for Defendant's goods, before the limited-time sale began.

101.    Reasonable consumers would also believe that the reference prices Defendant advertises represent the true comparison price for the Products, and are the prevailing price for those Products, and that they are receiving reductions from those regular prices in the amounts advertised. In truth, however, Defendant persistently offers sales at lower prices and only gives the false appearance of discounts off the purportedly regular prices it advertises. As a result, Defendant's price and purported discount advertising is false. The regular prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing market prices for the Products Defendant sells, and do not represent the true comparison price for the Products, because Defendant's Products are consistently available for less than that, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.

### D. The Reference Prices Are Not the Prevailing Market Price of the Products, Including During the Rolling 90-day Period Prior to the Offering and/or Purchase

102.    Defendant is the owner and operator of all sixteen of the brands and websites listed above. The vast majority of the Products' sales are sold by Defendant directly to consumers (at a purportedly discount price), on their websites.

103.    Defendant operates what it calls its "digital mall", which allows all of its websites and brands to be located in one place.[9] As described above, this "digital mall" lists all of Defendant's websites at the top of the screen and allows customers to seamlessly transition from one website to another with the same "Universal Cart."

104.    Defendant's chief executive officer, Jim Fogarty, describes Defendant as " the one-stop destination for great fitting, quality, on-trend, size-inclusive apparel."[10] This is because Defendant is the primary seller of its Products, through its various brands and websites, all of which are operated by Defendant as part of their digital mall. As the primary seller of the Products, Defendant sets the prevailing market price—most sales are made at Defendant's prices, because Defendant is the one making the sales.

105.    In short, because the Products are most commonly sold by Defendant, they are most commonly sold for the discounted prices that are always available from Defendant (across all Defendant's sales channels).

106.    Upon information and belief, the majority of Defendant's products that are sold anywhere, aresold on its own websites. To the extent the Products are sold through a third-party seller, the third-party sellers' prices for the Products are not the prevailing market price.[11]

---

[9] https://www.fbbrands.com/fullbeauty-brands-to-acquire-affordable-plus-size-specialty-retailer-avenue/.

[10] *Id*.

[11] To the extent there are other third-party sellers, many of the third-parties sell the Products at a price lower than the strikethrough reference price on Defendant's websites. For example, on October 17, 2024, Defendant listed the Perfect Three-Quarter Sleeve V-Neck Tunic on its Woman Within website for $16.79 with a strikethrough former price of $23.99. On the same day, the same product was listed on Amazon for $19.95, on Target's website for a price of $19.95 with a strikethrough reference price of $23.99, and on Shein's website for a price of $19.95 with a strikethrough reference price of $23.99.

## II.      Research Shows That Reference Price Advertising Influences Consumer Behavior and Perceptions of Value

107.     The anti-consumer effectiveness of Defendant's deceitful pricing scheme is backed by longstanding research.

108.     "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[12] Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases."[13] For this reason, the Ninth Circuit in *Hinjos* held that a plaintiff making a claim of deceptive pricing (similar to the claim at issue here) had standing to pursue his claim against the Defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013).

109.     "[D]ecades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."[14] According to academic studies, "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."[15]

110.     Further, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

111.     The use of false reference prices to misrepresent discounts is material. Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-

---

[12] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992).

[13] *Id*. at 56.

[14] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002).

[15] *Id*.

COMPLAINT FOR DAMAGES

thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[16] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[17]

112.    Another academic journal explains that "[r]eference price ads strongly influence consumer perceptions of value … Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when … the retailer highlights the relative savings compared with the prices of competitors … [T]hese bargain assurances (Bas) change consumers' purchasing behavior and may deceive consumers."[18]

113.    "[R]esearch has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."[19]

114.    "[R]eference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."[20] This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[21]

---

[16] Khalid Saleh, *How Discounts Affect Online Consumer Buying Behavior*, Invesp, June 16, 2024, https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/ (last visited September 11, 2024).

[17] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers PR NEWSWIRE (April 25, 2018), https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html#:~:text=In%2DLanguage%20News-,RetailMeNot%20Survey%3A%20Deals%20and%20Promotional%20Offers%20Drive%20Incremental%20Purchases%20Online,finding%20a%20coupon%20or%20discount. (last visited September 11, 2024).

[18] Joan Lindsey-Mullikin & ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

[19] Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

[20] Jerry B. Gotlieb & Cyndy Thomas Fitzgeral, *An Investigation Into The Effects of Advertised References Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990).

[21] *Id*.

115. Accordingly, research confirms that deceptive advertising through false reference pricing is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

### A. Consumers Suffered Harmed

116. Based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the regular prices at which Defendant usually sells its Products.

117. Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular or former price and/or market value is the advertised regular or former price and that they will receive the advertised discount from the regular or former purchase price

118. Plaintiffs and consumers paid a "price premium" for the Products. If the reference prices were omitted from the product listings, then Plaintiffs would not have purchased the Products.

119. Also, as further described above, the Plaintiffs and consumers are more likely to buy the Products if they believe that the product is on sale and that they are getting Products with a higher regular or former price and/or market value at a substantial discount.

120. Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products that it would not be able to charge absent the misrepresentations described above.

### III. Defendant's Deceptive Pricing Practices Violate Federal and California State Law

121. The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Under 16 C.F.R. § 233.1, which is titled Former Price Comparisons, the FTC prohibits such misleading price comparisons as the ones employed by Defendant.

122.    Pursuant to 16 C.F.R. § 233.1

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the *former price* is the actual, bona fide price at which the article was offered to the public *on a regular basis for a reasonably substantial period of time*, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an *artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction* – the "bargain" being advertised *is a false one*; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50 in order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" *This is obviously a false claim*. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he *never offered the article at all*; he might feature a price which was *not used in the regular course of business*, or which was *not used in the recent past* but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was *not maintained for a reasonable length of time*, but was immediately reduce.

16 C.F.R. § 233.1 (emphasis added).

123.    The FTCA expressly prohibits the advertising of former fictitious prices, like the scheme employed by Defendant, regardless of whether the product advertisements and representations use the words "regular", "original", or "former" price:

(e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

16 C.F.R. § 233.1.

124.    Defendant's pricing scheme directly violates the FTCA.

125.    In addition, Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

126.    Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501.

127.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

128.    California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

129.    Here, as described in detail above, Defendant makes material, untrue and misleading statements about its prices. Defendant advertises regular prices that are not its regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market

values without the intent to sell goods having those former prices. Defendant made false and misleading statements of fact concerning the reason for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. Defendant engaged in unlawful and deceptive business practices.

## CLASS ALLEGATIONS

130.    Plaintiffs bring this action individually and on behalf of all others similarly situated. The proposed class is defined as:

**California Class:**

> All persons residing in the State of California who, during the applicable limitations period, purchased one or more items from any of the websites operated by Defendant, at a represented discount from a higher reference price.

131.    Excluded from the Class is Defendant, its subsidiaries and affiliates, officers, directors, the members of their immediate families, and any entity in which any Defendant has a controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

132.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class if necessary, before this Court determines whether certification is appropriate.

133.    This case is properly brought as a class action under Fed. R. Civ. P. 23(b)(2) and (b)(3) and all requirements are met for the reasons set forth in the following paragraphs.

134.    *Numerosity*. The members of the Class are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to discovery, the Class consist of many thousands of members, the identity of whom are within the exclusive knowledge of Defendant and can be ascertained only by resorting to Defendant's records, discovery, and other third-party sources.

135.    *Commonality*. There are numerous questions of law and fact common to the Class relating to Defendant's business practices challenged herein, and those common questions

COMPLAINT FOR DAMAGES

predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

- o Whether Defendant's labeling, advertising, and marketing of the Products is false and misleading;
- o Whether Defendant advertised false reference prices on Products offered on the websites;
- o Whether Defendant advertised price discounts from the false reference prices on the Products offered on the websites;
- o Whether the Products listed on Defendant's websites were offered at their reference price during the three months prior to being offered at prices that were represented to be discounted from their reference prices;
- o Whether the Products listed on Defendant's websites were offered at their reference price within the three months preceding purchases by Plaintiff and class members;
- o Whether Defendant's misrepresentations were material to reasonable consumers;
- o Whether Defendant engaged in unlawful or unfair conduct prohibited by the California UCL;
- o Whether Defendant engaged in conduct prohibited by the California FAL;
- o Whether Defendant violated the CLRA's prohibition on unfair methods of competition and/or unfair and deceptive practices;
- o Whether Defendant violated the FTCA;
- o Whether Defendant harmed the Plaintiffs and members of the Class;
- o the proper relief; and
- o the declaratory and injunctive relief to which the Class is entitled.

136.    *Typicality.* Plaintiffs' claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practices engaged in by Defendant, as described herein.

COMPLAINT FOR DAMAGES

137.    *Adequacy of Representation.* Plaintiffs are adequate representatives of the Class because Plaintiffs have sustained damage as a result of Defendant's uniform conduct. In addition:

- o   Plaintiffs are committed to the vigorous prosecution of this action individually and on behalf of and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

- o   There is no hostility of interest between Plaintiffs and the unnamed Class members;

- o   Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

- o   Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal work associated with this type of litigation.

138.    *Predominance.* The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

139.    *Superiority.* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation and since the financial resources of Defendant are significant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

140.    All conditions precedent to bringing this action have been satisfied and/or waived.

### FIRST CAUSE OF ACTION
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**
**(On behalf of Plaintiffs and the California Class)**

141.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

142.    Plaintiffs and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17200.

143.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

144.    Defendant violated the UCL by engaging in "unlawful, unfair, and fraudulent business ats or practices" and engaging in "unfair, deceptive, untrue or misleading advertising," including advertising false and deceptive reference prices on its Products. Cal. Bus. & Prof. Code § 17200.

a.    *Unlawful Prong*

145.    As a result of engaging in the conduct alleged in this Complaint, Defendant has violated the UCL's proscription against engaging in "unlawful" conduct by virtue of their violations of the following laws:

(1)    **California Bus. & Prof. Code § 17501**: As further detailed in this Complaint, Defendant violated California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 and 17501.

(2)    **The Federal Trade Commission Act**: As detailed in this Complaint, Defendant violated 16 C.F.R. §§ 233.1 and 233.5.

(3)    **Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)**: As alleged, Defendant's conduct, individually and collectively, violates section 1770(a)(5), (7), (9), and (13) of the CLRA. Therefore, Defendant has also violated the UCL's "unlawful" provision.

146.    Plaintiffs reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date. Unless restrained and enjoined, Defendant will continue to engage in the unlawful conduct described herein.

147.    Defendant's conduct caused and continues to cause substantial injury to Plaintiffs and the Class. As described herein, Defendant made false and deceptive advertisements and representations regarding the reference prices on the Products it claimed were on sale. But for Defendant's unlawful and unfair conduct, Plaintiffs would not have purchased the Products.

148.    Plaintiffs have suffered injury in fact and have lost money as a result of Defendant's conduct.

149.    Accordingly, Plaintiffs and Class Members seek restitution from Defendant of all money obtained from Plaintiffs and the Class as a result of Defendant's unlawful acts.

**b. *Unfair Prong***

150.    As a result of engaging in the conduct alleged herein, Defendant has violated the UCL's proscription against "unfair" business practices.

151.    Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

152.    Defendant's unfair conduct alleged in the Complaint is illegal, deceptive, unethical, and unscrupulous. Under federal and state law, making false and deceptive claims about products being marketed and sold to consumers violates the UCL.

153.    Defendant's deceptive marketing gave consumers the false impression that their products were regularly listed or sold on the websites for a substantially higher price in the recent past than they were and, thus, led to the false impression that Defendant's products were being sold at a discount to a regular price.

154.    These acts and practices offend public policy by violating the CLRA and the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code 17500, *et seq.*

155.    Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers.

156.    Therefore, Defendant's conduct was and continues to be "unfair."

157.    Defendant's violations of the UCL continue to this day. Unless restrained and enjoined, Defendant will continue to engage in the unfair conduct described herein, and Plaintiffs would buy again from the Full Beauty sites if they knew that the pricing misrepresentations were halted.

158.    Defendant's conduct caused injury to Plaintiffs, as well as the Class members.

159.    The harm to Plaintiffs and members of the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

160.    Accordingly, Plaintiffs and the Class seek restitution from Defendant of all money obtained from Plaintiffs and the Class members as a result of Defendant's unfair competition.

### c. Fraudulent Prong

161.    As a result of engaging in the conduct alleged herein, Defendant has violated the UCL's proscription against "fraudulent" business practices.

162.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant affirmatively misrepresented the reference prices of products which, in turn, misled and deceived consumers into believing that they were buying products at substantially discounted prices. Defendant's deceptive marketing gave consumers the false impression that its products were regularly listed or sold on the website for a substantially higher price in at least the previous three months. Because Defendant misled Plaintiff and members of the Class, Defendant's conduct was "fraudulent."

163.    Defendant's advertisements concerning the reference price of Products on its websites were fraudulent business acts in violation of the UCL. These acts were reasonably likely to deceive consumers, and in fact did deceive Plaintiffs and induce them into purchasing Defendant's Products.

164. Defendant knew its Products were not actually sold at the higher reference price for a three month period of time preceding Plaintiffs' and class members' purchases.

165. Defendant had a duty to disclose the truth about its pricing deception, or advertise the prices correctly, including that the reference prices advertised on its website were not, in fact, prices at which Defendant's items were listed or sold on the website in the previous three months, but in truth, the products never (or rarely) were offered or sold at the reference prices.

166. Defendant made these statements with the intention that Plaintiffs would see them and rely on them to purchase their Products, and, in fact, Plaintiffs did rely on Defendant's fraudulent misrepresentations on Defendant's websites when purchasing the Products.

167. If not for Defendant's fraudulent acts and practices, Plaintiffs would not have purchased the Products.

168. As a result, Plaintiffs and Class Members suffered injury due to Defendant's t conduct.

169. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. As a result of Defendant's fraudulent business acts and practices, Defendant has fraudulently obtained money from Plaintiffs and Class Members and continues its misconduct.

170. Plaintiffs request that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq***
**(On behalf of Plaintiffs and the California Class)**

171. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

172. This Claim is brought on behalf of the California class, which is referred to in this section as the "Class."

COMPLAINT FOR DAMAGES

173.    Defendant violated Cal. Bus. & Prof. Code §§ 17500 and 17501.

174.    The California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, by states, in part, that:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, **which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…**

Cal. Bus. & Prof. Code § 17500. (emphasis added).

175.    The FAL also provides that:

> For the purposes of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> No price shall be advertised as a ***former price*** of any advertised thing, unless the alleged former price was the ***prevailing market price*** as above defined within ***three months next immediately preceding*** the publication of the advertisement of unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501. (emphasis added).

176.    As used in the FAL:

(a) The term "prevailing market price" refers to the "retail price" if the offer is at retail.

(b) The term "advertised thing" refers to the exact same product offered—***not*** an equivalent or similar product. *People v. Superior Ct. (J.C. Penney Corp.)*, 24 Cal App. 5th 376, 412 (2019) ("if the advertisement specifies a precise item—say, by reference to name, brand, or other distinctive features … the market and therefore

the market price is potentially determined on the basis of sales of ***that item only***.") (emphasis added).

(c) The term " 'former price' … includes but is not limited to the following words and phrases when used in connection with advertised prices: 'formerly—,' 'regularly—,' 'usually—,' 'originally—,' 'reduced from ___,' was ___ now __,' '___% off.'" 4 Cal. Code Regs., § 1301 (emphasis added).

(d) The "three-month period is properly construed as a 'rolling' period, that is, one whose beginning and end changes each day, thus requiring a daily recalculation of the prevailing market price during the three-month period." *People v. Superior Ct. (J.C. Penney Corp.)*, 24 Cal App. 5th 376, 416 n.26 (2019) (emphasis added).

177.    As alleged more fully above, Defendant advertises former prices along with discounts on its websites. Defendant does this, for example, by crossing out a higher price (e.g. $150) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices denoted as regular prices from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charges before the discount went into effect.

178.    The reference prices advertised as former or regular prices on Defendant's websites are not former or regular prices under the FAL. Defendant rarely, if ever, offered Products on the websites at the reference prices within three months immediately preceding the publication of the reference prices. Additionally, the reference prices shown were not the prevailing market prices for the Products in the three months immediately preceding the publication.

179.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on the false reference prices when purchasing Defendant's Products. Defendant's misrepresentations were a substantial factor in the Plaintiffs' purchase decisions.

180.    Plaintiffs and Class Members relied on Defendant's false advertisements with regard to the Products, at the time of purchase.

181.    As a result of Defendant's violation of the FAL, Plaintiffs and Class Members suffered substantial injury and lost money.

182.    Pursuant to Cal. Bus. & Prof. Code § 17535, this Court has the power to award such equitable relief, including but not limited to an order declaring the reference prices listed on Defendant's Products' to be unlawful, an order enjoining Defendant from engaging in any such further unlawful conduct, and an order directing Defendant to refund to Plaintiffs and Class Members all monies wrongfully collected as a result of its false advertisements.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code §§ 1750, *et seq.*)**
**(On behalf of Plaintiffs and the California Class)**

183.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

184.    Plaintiffs and members of the Class are "consumers," as that term is defined by Civil Code § 1761(d), because they purchased Products for personal, family, or household purposes.

185.    Plaintiffs and Class members have engaged in a "transaction" with Defendant, as that term is defined by Civil Code § 1761(e).

186.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for purposes of the CLRA, and was undertaken by Defendant in transactions intended to result in, and which resulted in, the sale of goods or services to consumers.

187.    As described more fully above, Defendant made and disseminated untrue and misleading statements of fact in its advertisements to class members. Defendant did this by using fake reference prices, i.e., reference prices that are not the prevailing market price, and/or were not the prevailing market price within the three months preceding the publication of the discount, and advertising fake discounts.

188.    As a result of Defendant's conduct, Plaintiffs and Class members purchased Defendant's Products for their use.

189.    By engaging in the conduct described herein, Defendant has violated the following subdivision of California Code § 1770(a) by:

(5)  Representing  that  goods  or  services  have  sponsorship,  approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

(9) Advertising goods or services with intent not to sell them as advertised.

(13)  Making  false  or  misleading  statements  of  fact  concerning  reasons  for, existence of, or amounts of price reductions.

190.    Regarding section 1770(a)(13), Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because (a) no true price reductions existed in that Defendant's Products were rarely, if ever, offered for sale and/or sold on the websites at the higher reference prices, let along on a regular basis within the three months immediately preceding the publication of the reference prices, (b) the reference prices Defendant advertised in connection with its Products are not prevailing market prices because, on information and belief, the Products were not sold elsewhere at the reference prices on a regular basis within the three months immediately preceding the publication of the reference prices, and (c) Defendant falsely represents the Products as on sale for a limited time when in truth it appears they are perpetually sold at the advertised "sale" prices.

191.    With regards to sections 1770(a)(5), (7), and (9), Defendant advertised and represented Products on the websites with the "intent not to sell" them as advertised and misrepresenting product characteristics and standards because, as explained herein, the false reference prices advertised in connection with products offered on the website misled and continue to mislead customers into believing the Products were previously offered for sale and/or sold on the websites at the higher reference prices during the three months preceding the advertisement.

192.    Defendant made material misrepresentations regarding the prices and discounts on its Products.

193.    Defendant's violations of the CLRA proximately caused injury in fact to Plaintiffs and the Class.

COMPLAINT FOR DAMAGES

194.   Plaintiffs reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff would not have purchased the items they purchased from Defendant. Plaintiff reliance was a substantial factor in causing them harm.

195.   Pursuant to Cal. Civ. Code § 1782(d), Plaintiffs, individually and on behalf of the Class, seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

196.   On July 30, 2024, pursuant to Cal. Civ. Code § 1782(a), Defendant was sent in writing by certified mail, notice of the violations of Section 1770 of the CLRA, which notification demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

197.   Defendant's counsel acknowledged receipt of the letter, but Defendant failed to rectify or agree to rectify the problems associated with the actions detailed above or give notice to all consumers within 30 days of receipt of the CLRA notice letter. Accordingly, Plaintiffs seek damages, as permitted and appropriate.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs and members of the Class, respectfully request that the Court:

a.   Certify this case as a class action, designating Plaintiffs as class representatives and designating the undersigned as Class Counsel;

b.   Declaring that Defendant's conduct violates the statutes set forth above;

c.   Award Plaintiffs and the Class actual damages in an amount according to proof;

d.   Award Plaintiffs and the Class restitution in an amount to be proven at trial;

e.   Award Plaintiffs and the Class pre-judgment interest in the amount permitted by law;

f.   Award Plaintiffs and their attorneys fees and costs as permitted by law;

g.   Declare Defendant's practices outlined herein to be unlawful;

h.   Grant equitable and/or injunctive relief, including to enjoin Defendant from engaging in the practices outlined herein;

i.   Grant Plaintiffs and the Class a trial by jury;

j.   Grant leave to amend these pleadings to conform to evidence produced at trial; and

k.  Grant such other relief as the Court deems just and proper, including all forms of relief provided for under the UCL, CLRA, and FAL.

### JURY DEMAND

Plaintiffs, by counsel, demand a trial by jury.

Dated: October 21, 2024                    Respectfully submitted,

                                          */s/ Jeff Westerman*
                                          **ZIMMERMAN REED LLP**
                                          Jeff Westerman
                                          Caleb Marker
                                          6420 Wilshire Blvd, Suite 1080
                                          Los Angeles, CA 90048
                                          (877) 500-8780 Telephone
                                          (877) 500-8781 Facsimile
                                          jeff.westerman@zimmreed.com
                                          caleb.marker@zimmreed.com

                                          **JENNINGS PLLC**
                                          Tyler B. Ewigleben*
                                          500 President Clinton Avenue, Suite 110
                                          Little Rock, Arkansas 72201
                                          Telephone: (501) 372-1300
                                          chris@jenningspllc.com
                                          tyler@jenningspllc.com
                                          winston@jenningspllc.com

                                          * *Pro Hac Vice* applications to be submitted

                                          *Counsel for Plaintiff and the Proposed Class*

COMPLAINT FOR DAMAGES